# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

    v.                                     Case No. 08-CR-50

**ROBERT HOOVER**
        Defendant.

## SENTENCING MEMORANDUM

Defendant Robert Hoover pleaded guilty to unlawfully possessing firearms subsequent to his convictions for misdemeanor crimes of domestic violence, 18 U.S.C. § 922(g)(9), and I set the case for sentencing. In imposing sentence, I first calculate the advisory guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 14, U.S.S.G. § 2K2.1(a)(6), added 2 levels based on the number of firearms involved, § 2K2.1(b)(1)(A), then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 13. Coupled with his criminal history category of III, the PSR recommended a guideline imprisonment range of 18 to 24 months. I found these calculations correct and adopted them without objection.

### II. SECTION 3553(a)

**A.   Sentencing Factors**

Under § 3553(a), the court must consider:

(1)     the nature and circumstances of the offense and the history and

characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). While the court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place any "thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B. Analysis**

**1. The Offense**

Defendant sustained several convictions for misdemeanor crimes of domestic violence:

a 1989 battery case, in which he threw his first wife, Debra, to the ground and against a car, fracturing her shoulder, then attacked a neighbor who tried to intervene; a 2002 disorderly conduct case, with a read-in battery, in which he threw an object at his second wife, Diana, hitting her in the face; and a 2007 domestic abuse/disorderly conduct case, in which he grabbed Diana by the throat and pushed her into a wall, causing her to strike her head. A state court placed defendant on probation for the 2007 case, pursuant to which he was advised that he could not possess firearms based on his convictions. In fact, one of his specific rules of probation in that case was that he not possess guns, and his probation officer also told him that on several occasions. Defendant advised the officer he had a gun, she told him to get rid of it, and he said he gave it to his father.

In December 2007, the probation officer learned that defendant obtained a bow hunting license without prior approval. On December 14, agents conducted a search of his residence; defendant claimed he had no guns but gave them his bow, which was in the trunk of his car. Agents continued to search the garage and found a Corvette under a tarp. As the agents looked toward the trunk of the car, they heard defendant cough and say "shit." They then found two gun cases and an ammunition box, which contained two loaded handguns and 392 rounds of ammunition. They also found shotgun shells in a night stand in the residence.

After his arrest, defendant admitted that he knew the guns were in his car and stated that he did not give them to his father because he did not want to admit to his father that he was on probation. He also admitted that he had several long guns at his business and provided consent to search, pursuant to which agents seized four firearms from defendant's office closet.

Further investigation revealed that defendant obtained the handguns found in his garage

3

in 2001, and that he falsely stated on an ATF form that he had never been convicted of a misdemeanor crime of domestic violence. This form, too, alerted defendant to his prohibited status.

In his statement submitted to the PSR writer in this case, defendant admitted that his state PO told him he should not have guns, but he claimed not to know of the federal ban. Knowledge of the specific ban under 18 U.S.C. § 922(g)(9) is not required to convict, but in any event I had significant doubts about this statement, based on what the state PO told him and based on the contents of the ATF form he filled out (falsely, which constituted another violation of law). I was also unimpressed by his act of putting the guns in the Corvette in the garage and in his office closet; such concealment did not divest him of possession, as he surely knew. Thus, I considered the offense serious because it revealed disrespect for the law.

### 2. The Defendant

Defendant was forty-seven years old, with a criminal record as described above. His wife Diana stated to the PSR writer and in court that they had made strides in their relationship, and that defendant was no longer a violent person. I hoped this was true but found it far too soon to know with any certainty, given defendant's nearly twenty year history of domestic violence, with the last incident occurring barely over a year ago. I also noted that defendant started counseling in October 2005, which seemed to go well according to the counselor, yet he committed another DV offense in May 2007. Thus, while the counselor was positive, it was not at all clear that defendant had truly gained control of his anger.

The record contained no evidence of a significant substance abuse problem, but defendant agreed that he had to stay away from alcohol, which potentially acted as a trigger for his anger. Defendant also reported receiving mental health treatment, including medication.

4

In addition to his efforts in counseling, the record contained other positives: defendant graduated high school and college, and he operated a business for the past seventeen years. He shared a four year old son with his second wife and seemed concerned about maintaining his family.

### 3. Purposes of Sentencing

My task under § 3553(a) is to select a sentence that is sufficient to satisfy the purposes of sentencing, but not greater than necessary. In other words, I am not supposed to impose unnecessary punishment. This is known as the "parsimony provision," and the Supreme Court has characterized it as the "overarching" command of the statute. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007). Under § 3553(a)(3), I also have to consider the kinds of sentences available, including non-incarceration sentences, even when the guidelines recommend prison. See Gall, 128 S. Ct. at 602. In this case, defendant requested a sentence of probation, while the government advocated a prison term at the low end of the guidelines.

I found that a period of confinement was necessary to satisfy the purposes of sentencing, particularly the need to promote respect for the law. I was struck by a comment in the PSR by defendant's sister that he was someone who always tried to "push the envelope" until he got caught. That attitude best described this crime: defendant knew he could not possess guns, but he thought if he hid them in the trunk of a car and in his office closet he could get away with it. The same with his lie on the ATF form. Further, defendant received relatively lenient treatment in state court for his violence, with probationary sentences, which perhaps contributed to his attitude. Therefore, I found that prison was necessary to promote respect for the law and to deter defendant from re-offending.

The guidelines called for 18-24 months, but I found that something less would suffice.

5

Defendant presented little or no threat to the general public, with firearms or on any other basis. He had no history of using firearms inappropriately. His relationship with his wife, the source of his previous criminality, appeared to be improving. He needed continued counseling to address that, which I required as part of the sentence. Finally, I took into account defendant's cooperation upon arrest, pursuant to which he gave up the long guns in his office.

Under all of the circumstances, I found a total sentence of 10 months sufficient but not greater than necessary. That sentence fell just 3 levels below the guideline range, and because it was based on the specific facts discussed above it created no unwarranted disparity. I split that sentence into 5 months prison and 5 months home confinement. This resulted in him serving more time that he ever had before, which was 90 days based on the revocation of his probation in the 2007 case. I also took into account that the revocation was based primarily on the circumstances presented in this case; it appeared that he was otherwise doing pretty well.

## III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 5 months, followed by the maximum period of supervised release, three years, with conditions including, inter alia, no alcohol, participation in mental health treatment and an approved program for domestic violence, and 150 days of home confinement. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 10th day of August, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

6

Case 2:08-cr-00050-LA    Filed 08/11/08    Page 6 of 6    Document 13